UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

FILED

AUG 21 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY ____, DEPUTY

GEORGIA C BEAR, PLAINTIFF )
)
v. )
) Case No. CIV-26-2213-PRW
)
THE CITY OF DEL CITY, OKLAHOMA, ) JURY TRIAL DEMANDED
ARON MARES, Individually, )
BLAKE REICHERT, Individually, )
CHAUNCEY WARD, Individually, )
CHRISTOPHER GRIGGS, Individually, )
DEFENDANTS. )

Complaint for Damages Under 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act

## COMPLAINT AND JURY DEMAND

Plaintiff, Georgia C. Bear, appearing pro se, for her Complaint against Defendants City of Del City, Aron Mares, Blake Reichert, Christopher Griggs, and Chauncey Ward, alleges and states as follows:

## INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, alongside

supplemental state law tort claims under the Oklahoma Governmental Tort Claims Act (GTCA), 51 O.S. § 151, et seq.

2. Plaintiff seeks redress for injuries caused by the individual Defendants' intentional, reckless, and deliberately indifferent violations of her constitutional rights, specifically their unlawful warrantless entry into her home, excessive use of force, unlawful arrest, and unconstitutional post-arrest detention, alongside supplemental state law claims against the City of Del City for gross operational negligence, false arrest, and false imprisonment.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3)–(4) (civil rights jurisdiction), as this action is brought to redress the deprivation of rights secured by the Constitution of the United States under color of state law.

4. This Court has supplemental jurisdiction over Plaintiff's state law tort claims under 28 U.S.C. § 1367(a), because the Oklahoma state law claims arise out of the exact same common nucleus of operative facts and form part of the same case or controversy as the federal constitutional claims.

5. Venue is proper in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all Defendants reside or operate within this judicial district, and a substantial part of the events, acts, and omissions

giving rise to Plaintiff's claims occurred in Del City, Oklahoma, which sits within this district.

## OKLAHOMA GTCA COMPLIANCE

6. Procedural Prerequisites to GTCA Claims: Plaintiff has fully complied with all procedural requirements of the Oklahoma Governmental Tort Claims Act, 51 O.S. § 156. On November 24, 2025, Plaintiff timely filed a written Notice of Claim with the City Clerk of Del City.

7. Plaintiff's GTCA claim was deemed denied by operation of law on February 22, 2026, after ninety (90) days passed without city action. Plaintiff timely files this action within 180 days of said denial, on or before August 21, 2026, pursuant to 51 O.S. § 157.

## PARTIES

8. Plaintiff Georgia C Bear is an individual and a citizen of the United States. At all times relevant to this Complaint, Plaintiff resided in Del City, Oklahoma, within the Western District of Oklahoma.

9. Defendant City of Del City, Oklahoma, is a municipal corporation organized and existing under the laws of the State of Oklahoma. Defendant City operates the Del City Police Department ("DCPD"), which is a law enforcement agency funded, controlled, and managed by the City.

   a. The City is sued under 42 U.S.C. § 1983 for constitutional violations resulting from its unconstitutional policies, customs, and widespread practices (Monell claims).

b. The City is further sued under the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151 et seq., for the operational negligence and tortious conduct of its employees acting within the scope of their employment.

10. Defendant Aron Mares was at all relevant times a duly appointed, employed, and acting police officer for the Del City Police Department, acting under color of state law.

a. **Federal Capacity:** For purposes of the federal claims under 42 U.S.C. § 1983, Defendant Mares is sued in his individual capacity.

b. **State Capacity (In the Alternative):** For the supplemental state-law claims, Plaintiff pleads in the alternative:

i. *Alternative A (Municipal Liability):* Defendant Mares acted within the scope of his employment and in good faith, but executed his operational duties with gross negligence and a total failure to exercise slight care, thereby rendering Defendant City of Del City solely and exclusively liable for his tortious conduct pursuant to 51 O.S. § 153.

ii. *Alternative B (Individual Liability):* Alternatively, if a trier of fact determines that Defendant Mares's conduct constituted fraud, malice, or bad faith as set forth herein, his actions fell outside the statutory scope of employment, rendering Defendant Mares personally liable in his individual capacity under Oklahoma common law.

11. Defendant Blake Reichert was at all relevant times a duly appointed, employed, and acting police officer for the Del City Police Department, acting under color of state law.

a. **Federal Capacity:** For purposes of the federal claims under 42 U.S.C. § 1983, Defendant Reichert is sued in his individual capacity.

b. **State Capacity (In the Alternative):** For the supplemental state-law claims, Plaintiff pleads in the alternative:

i. *Alternative A (Municipal Liability):* Defendant Reichert acted within the scope of his employment and in good faith, but executed his operational duties with gross negligence and a total failure to exercise slight care, thereby rendering Defendant City of Del City solely and exclusively liable for his tortious conduct pursuant to 51 O.S. § 153.

ii. *Alternative B (Individual Liability):* Alternatively, if a trier of fact determines that Defendant Reichert's conduct constituted fraud, malice, or bad faith as set forth herein, his actions fell outside the statutory scope of employment, rendering Defendant Reichert personally liable in his individual capacity under Oklahoma common law.

12. Defendant Chauncey Ward was at all relevant times a duly appointed, employed, and acting police officer with the rank of Lieutenant and Watch Commander/Supervisor for the Del City Police Department, acting under color of state law. Defendant Ward possessed direct command and supervisory authority over Defendant Mares.

a. **Federal Capacity:** For purposes of the federal claims under 42 U.S.C. § 1983, Defendant Ward is sued in his individual capacity.

b. **State Capacity (In the Alternative):** For the supplemental state-law claims, Plaintiff pleads in the alternative:

i. *Alternative A (Municipal Liability):* Defendant Ward acted within the scope of his employment and in good faith, but executed his supervisory, supervisory-review, and command duties with gross negligence and a total failure to exercise slight care, thereby rendering Defendant City of Del City solely and exclusively liable for his operational omissions pursuant to 51 O.S. § 153.

ii. *Alternative B (Individual Liability):* Alternatively, if a trier of fact determines that Defendant Ward's conduct constituted fraud, malice, or bad faith as set forth herein, his actions fell outside the statutory scope of employment, rendering Defendant Ward personally liable in his individual capacity under Oklahoma common law.

13. Defendant Christopher Griggs was at all relevant times a duly appointed, employed, and acting police officer with the rank of Detective and Lead Investigator for the Del City Police Department, acting under color of state law. Defendant Griggs was specifically assigned as the lead investigator over the underlying incidents described herein.

a. **Federal Capacity:** For purposes of the federal claims under 42 U.S.C. § 1983, Defendant Griggs is sued in his individual capacity under theories of investigative deception, manipulation, suppression of exculpatory evidence, and the unconstitutional restriction of Plaintiff's liberty.

b. **State Capacity (In the Alternative):** For the supplemental state-law claims, Plaintiff pleads in the alternative:

i. *Alternative A (Municipal Liability):* Defendant Griggs acted within the scope of his employment and in good faith, but executed his investigative duties with gross negligence and operational incompetence, thereby rendering Defendant City of Del City solely and exclusively liable for his negligent case handling pursuant to 51 O.S. § 153.

ii. *Alternative B (Individual Liability):* Alternatively, if a trier of fact determines that Defendant Griggs' conduct constituted fraud, malice, or bad faith as set forth herein, his actions fell outside the statutory scope of employment, rendering Defendant Griggs personally liable in his individual capacity under Oklahoma common law.

## COLOR OF LAW ALLEGATIONS

14. At all times relevant to this action, Defendants Mares, Reichert, Ward, and Griggs acted under color of state law, statutes, ordinances, regulations, policies, customs, and usages of the State of Oklahoma and the City of Del City.

15. At all times relevant, the individual Defendants utilized the authority, uniforms, badges, weapons, and vehicles provided to them by the City of Del City to engage in the unlawful conduct described herein.

## FACTUAL ALLEGATIONS

### Background and Initial Incident

16. On November 24, 2024, Plaintiff returned home to 4420 Epperly Drive, Del City, Oklahoma, after picking up her adult daughter (the reporting party) from work. During the drive, the reporting party became agitated, threw Plaintiff's personal papers out of the vehicle, and exited the car. She then walked the short remaining distance to Plaintiff's residence.

17. Upon arriving home, Plaintiff discovered that the reporting party had entered Plaintiff's locked bedroom without permission and taken Plaintiff's prescribed Schedule II Controlled Dangerous Substance (Vyvanse). When confronted, the reporting party retreated into a guest bedroom and began recording Plaintiff with her cell phone.

18. Plaintiff attempted to retrieve her medication. The reporting party attempted to close the door, and a brief physical struggle occurred over the opened medication container. Plaintiff saw that the reporting party was actively opening the container for the express purpose of actively ingesting and permanently destroying Plaintiff's lawfully prescribed Schedule II medication inside Plaintiff's own home. To prevent the imminent destruction of her property, a severe medical overdose crisis, and the illegal consumption of a Controlled Dangerous Substance (CDS) inside her home, Plaintiff used reasonable, non-deadly force under 21 O.S. § 643(3) to prevent the imminent destruction and ingestion of her Schedule II medication. The reporting party continued shouting accusations while actively consuming Plaintiff's medication.

19. After Plaintiff recovered most of her medication, she instructed the reporting party to return the spare key and leave. Plaintiff then locked her bedroom door, used her CPAP machine and prescribed sleep aids due to illness, and fell asleep.

20. The reporting party contacted law enforcement and reported the incident as a domestic assault, omitting her unauthorized entry into Plaintiff's locked room, her possession and ingestion of Plaintiff's Schedule II medication, and her initiation of the recording only after retreating with Plaintiff's property.

**First Police Response (00:13–02:29 a.m., November 26, 2024)**

21. Plaintiff remained asleep throughout the first police response due to illness, prescribed sleep medication, earplugs, and CPAP use. A temporary houseguest informed officers that Plaintiff was asleep and the houseguest lawfully refused consent for entry they claimed was to collect the reporting party's belongings.

22. Defendant Aron Mares conducted an injury assessment of the reporting party and documented no injuries to her head, despite her allegations of repeated strikes to the left side of her face.

23. The reporting party made several inaccurate statements, including claiming Plaintiff had shut off her phone and that she was dependent on Plaintiff. In reality, the reporting party lived independently, owned her phone outright, and paid her own bill.

24. The houseguest banged on Plaintiff's bedroom door to inform her of the police presence outside. Half-awake, disoriented, and physically impaired by her prescription

sleep aids and active respiratory infection, Plaintiff briefly stepped out of her bedroom into the interior hallway and made a confused remark to the houseguest that officers 'should figure it out' once they run a check for domestic violence prior history,' before immediately returning to her room and falling back into a deep sleep. Plaintiff did not hear officers' subsequent callouts.

25. Defendant Mares failed to perform mandatory statutory domestic-violence procedures under 22 O.S. § 60.16, including running names, checking for protective orders, or conducting a dominant-aggressor analysis. Had he done so, he would have discovered Plaintiff's active Victim Protective Order (VPO) issued two months earlier against her husband, the reporting party's father, and the reporting party's documented history of aggression and abuse against Plaintiff.

26. Defendant Mares cannot utilize an NCIC transaction log as a legal shield to claim compliance with domestic violence protocols, as a generic National Crime Information Center (NCIC) or OLETS "wants check" executed via Message Key 'QWA' completely fails to satisfy Oklahoma's non-discretionary statutory requirement to evaluate prior histories between the parties to determine the primary and dominant aggressor under 22 O.S. § 60.16(B)(2). Because an NCIC wants check is a macro-level search designed exclusively to screen for active criminal warrants and statewide protective orders, it completely misses localized, non-arrest calls for service, verbal domestic incident reports, and historical municipal 911 dispatch records.

27. Officers attempted to gain entry using a "we come in peace" message, in an attempt to claiming to want to retrieve items that the reporting party claimed to have left in the house. They knocked on the door, when a young lady temporarily staying at Plaintiff's home did not grant entry. Defendant Mares Set up a perimeter and began callouts. When that received no response, as plaintiff was asleep, officers cleared the scene at approximately 02:29 a.m.

**Second Police Response (23:25–23:32 p.m., November 26, 2024)**

28. More than twenty-three hours later, Defendants Mares returned to Plaintiff's residence. Defendant Reichert arrived on-scene shortly after Defendant Mares. During this extensive window, no warrant was sought, and no statutory checks were performed.

29. Defendant Mares claimed to have seen Plaintiff "near the window at the door."

30. Defendant Mares refused to conduct a telephonic interview, asserting he needed to "see" Plaintiff. Defendant Mares and Reichert issued escalating threats to break down Plaintiff's door if she did not exit her home.

**Warrantless Entry and Arrest**

31. Plaintiff opened her front door solely in response to Defendants' escalating threats to forcibly breach it. While Plaintiff remained fully inside her home, Defendants demanded that she step outside. Plaintiff declined and attempted to close her door, exercising her constitutional right to terminate a warrantless encounter.

32. Plaintiff attempted to close her door and stood behind it because she was scared. Plaintiff was not attempting to flee, hide, or evade arrest; she was simply trying to protect herself during a frightening and escalating encounter. When officers forced the door open, Plaintiff instinctively moved behind it out of fear. After being handcuffed and placed in the cruiser, Plaintiff attempted to explain that she had been hiding behind the door because she was terrified, not because she was resisting or attempting to avoid arrest. Plaintiff also told Defendant Mares that he did not have the whole story and that the reporting party had a documented history of aggression toward her. Plaintiff's statements were made in a trauma-conditioned effort to ensure her safety and to get through the encounter without additional physical harm.

21. Defendants Mares and Reichert immediately forced the door open, crossed the residential threshold, and made a deep, physical entry into Plaintiff's home, where Defendants Mares and Defendant Reichert officers forcefully crushed Plaintiff between the heavy front door and the interior wall, shoved her against an interior garage door, twisted her arms behind her back, and tightly applied mechanical handcuffs, causing Plaintiff to drop her electronic devices. When Plaintiff cried out, "This is not okay!", an officer dismissively responded, "Yes it is."

33. This warrantless entry and arrest were executed without a warrant, without consent, and without any exigent circumstances.

34. Plaintiff was handcuffed and removed from her residence. As a 24-year domestic-violence survivor with an active VPO, Plaintiff experienced acute trauma

during the encounter and attempted to verbally placate the officers out of fear. Any statements minimizing her attempt to close her own door reflected a trauma-induced survival response; Plaintiff's act of closing her door was a lawful exercise of her constitutional right to refuse a warrantless entry into her home.

35. While confined in the rear of the police cruiser, Plaintiff explicitly put Defendant Mares on notice that the reporting party possessed a documented history of domestic abuse against Plaintiff. One of those incidents had resulted in the reporting party's arrest, not because Plaintiff pressed charges, but because the reporting party resisted arrest, assaulted, and bit the responding officer.

36. Defendant Mares shut down Plaintiff's disclosures, "I am not gonna argue with you. I am not gonna talk to you!" Plaintiff was not trying to argue; Plaintiff was merely trying to state facts that were material to the case.

37. Defendant Mares and Defendant Reichert failed to secure the scene, failed to run a mandatory background check and left the hostile reporting party at the scene with full knowledge that the reporting party had withheld a key from plaintiff.

**Medical Neglect and Scene Mismanagement**

38. While confined in the rear of the police cruiser, Plaintiff informed Defendant Mares that she was a disabled veteran who required multiple prescription medications, used 3 medically necessary machines when she traveled, and urgently needed her rescue inhaler and medication as she had just left an urgent care facility less than six hours earlier.

39. Because the reporting party was the only person other than Plaintiff who knew the electronic keypad code to Plaintiff's locked bedroom door, Plaintiff asked Defendant Mares to have the reporting party provide the code to the young woman who was inside the home so that Plaintiff's rescue inhaler could be retrieved without allowing the hostile reporting party back into the residence.

40. Defendants Mares and Reichert instructed the reporting party to provide the bedroom keypad code to the young woman inside the home. The reporting party repeatedly provided incorrect and non-functioning numerical sequences. Rather than applying basic investigative skepticism to these obvious discrepancies, Defendant Mares and Defendant Reichert improperly attributed the failed entry attempts to the young woman inside the residence.

41. After these failed attempts, Defendant Mares returned to the doorway and made an unauthorized decision regarding Plaintiff's home and property. Without Plaintiff's knowledge or consent, Defendant Mares instructed and authorized the reporting party to enter Plaintiff's private residence and locked bedroom unescorted. Upon being granted entry, the reporting party immediately bypassed the electronic lock and successfully unlocked the secure door on her very first attempt revealing that her prior dissemination of non-functioning codes was a deliberate ruse to manipulate law enforcement into granting her unsupervised access to Plaintiff's private quarters. The reporting party entered Plaintiffs room and closed the door behind her. She exited Plaintiffs bedroom a few minutes later and secured the bedroom door. She subsequently exited Plaintiff's home without Plaintiff's inhaler.

42. The structural mechanics of the entry, the intentional dissemination of the bad codes, and the fact that the reporting party successfully unlocked the secure keypad on her very first attempt once allowed inside unescorted, were relayed to Plaintiff by the young woman who was staying inside the residence, immediately upon Plaintiff's release on bond.

43. Plaintiff was subsequently denied access to all of her prescribed medications, life-sustaining medical machinery, and physical therapies for three consecutive days of her four-day confinement in the county jail over the Thanksgiving holiday weekend, despite her known, documented internal medical vulnerabilities. Plaintiff survived this prolonged medical deprivation solely because another inmate shared a rescue inhaler during those initial days of confinement.

44. After receiving bond, Plaintiff discovered that two full bottles (56 pills) 70 mg each of her Schedule II Vyvanse medication

were missing. The reporting party was the only person with the access code and unsupervised entry into the secure space.

**Failure to Perform Mandatory Domestic-Violence Procedures**

45. Oklahoma law mandates that law enforcement officers responding to domestic abuse incidents perform specific, non-discretionary statutory procedures pursuant to 22 O.S. § 60.16. These mandatory duties include, but are not limited to: conducting a dominant aggressor analysis, running the names of both parties through state database systems to check for prior incidents or active protection orders, completing formal lethality

assessments, and physically documenting all offensive, defensive, or self-inflicted injuries.

46. Defendant Mares and Defendant Reichert performed none of these required statutory steps during either response to the residence.

47. Had Defendant Mares and Defendant Reichert performed these mandatory procedures and executed a proper database query on both names as required by law, they would have immediately discovered Plaintiff's recent and active Victim Protective Order issued two months earlier against her husband the reporting party's father.

48. Furthermore, a proper statutory database check would have revealed the reporting party's documented history of aggression and abuse toward Plaintiff, including a prior incident resulting in the reporting party's arrest for attempting to flee the scene, resisting arrest, assaulting and biting the responding officer.

49. Defendant Mares and Defendant Reichert failed to document Plaintiff's visible medical condition, failed to collect physical evidence, and failed to verify whether the reporting party's injuries were offensive, defensive, or entirely self-inflicted.

50. Upon reviewing the state's official criminal discovery file, Plaintiff unmasked an administrative document generated by Defendant Mares, processed by the Del City Police Department, and forwarded to the District Attorney's Office by Defendant Griggs titled 'Authority for Release of Information.' The standardized template contains Plaintiff's name and the reporting party's name handwritten within the text blocks, and

explicitly features Defendant Mares' signature as the witnessing official. The signature on the authorization line appears to be that of the reporting party.

51. Plaintiff possesses no knowledge as to why Defendant Mares would write in Plaintiff's identity to request her private medical and mental health records. Additionally, Plaintiff possesses no knowledge as to why Defendant Mares would secure a third-party signature, that of the reporting party, on an administrative waiver purporting to authorize the release of Plaintiff's confidential medical and mental health records, as Plaintiff is an adult and maintains exclusive legal authority over her personal data.

52. The systematic omission of these mandatory statutory duties, coupled with the processing of an unnotarized third-party waiver targeting an adult's private data, demonstrates a severe operational departure from standard data-privacy protocols, a failure to adhere to statutory protective policies, and a complete breakdown of mandatory supervisory review.

**Material Omissions and Factual Inaccuracies in the CPC Affidavit**

53. The Probable Cause (CPC) affidavit sworn by Defendant Mares contains multiple material omissions, factual inaccuracies, and distortions that fundamentally altered the probable-cause determination. Most critically, the affidavit completely omitted the fact that Defendants Mares and Reichert made a deep, warrantless physical entry into Plaintiff's home to effectuate the arrest. Plaintiff was seized inside her residence, not outside, and no warrant, consent, or exigent circumstances existed.

54. Instead of disclosing the warrantless entry, Defendant Mares stated in the affidavit that Plaintiff "refused to come out" and "attempted to close the door on officers." This wording is vague and non-specific, leaving unclear whether officers crossed the threshold, blocked the door, or entered Plaintiff's home. The omission of these essential facts concealed the unconstitutional manner in which the arrest was executed and prevented a magistrate from evaluating the legality of the entry.

55. The CPC affidavit is drafted in a vague and non-descriptive manner that fails to provide the specificity required for a lawful probable-cause determination. The statements that Plaintiff "opened the front door," was "told to step outside," and "attempted to close the door on officers but was unsuccessful" do not explain whether officers entered the home, whether Plaintiff remained inside, or how physical contact occurred. This ambiguity is unacceptable in a legal document intended to justify detention, as it obscures the constitutional boundary between a lawful threshold encounter and an unlawful warrantless entry.

56. Defendant Mares further omitted that Plaintiff opened her door only because officers repeatedly threatened to break it down. Plaintiff remained fully inside her home when she attempted to close her door, exercising her constitutional right to terminate a warrantless encounter. The affidavit omitted this fact and instead framed Plaintiff's lawful act as resistance.

57. The affidavit also omitted that Plaintiff did not give permission for anyone to enter her home and did not consent to any entry by officers or third parties. Defendant Mares's

omission of the warrantless entry concealed the unconstitutional manner in which the arrest was executed.

58. The affidavit included unverified claims that Plaintiff pushed the reporting party onto a bunk bed and struck her repeatedly, despite the reporting party's own written statement indicating Plaintiff "threw / fell" (sic) onto the bed. No investigation was conducted to reconcile these inconsistencies.

59. Defendant Mares also included an unsubstantiated narrative that Plaintiff retrieved a knife, left the residence, and fled in her vehicle. He stated that the reporting party's video corroborated her statement, but this was not a factual assertion. Plaintiff's vehicle remained stationary in the driveway throughout both police responses. No investigation was conducted to verify this claim.

60. The affidavit also claimed that Plaintiff looked through the glass window on the front door. Plaintiff was in her bedroom which is in the back of the house.

61. Additionally, the CPC affidavit contains no judicial signature, rendering the detention facially invalid under Oklahoma law. The affidavit was executed solely by Defendant Mares and notarized by Defendant Ward, despite containing material omissions, contradictions, and physically impossible observations.

62. Plaintiff was present inside the Del City Police Department while Defendant Mares prepared the CPC affidavit. Plaintiff personally observed Defendant Ward enter the report-writing room, review the affidavit, and notarize it. Immediately after notarizing the document, Defendant Ward stated that the affidavit contained errors and told

Defendant Mares that he could "fix it when he came back." Defendant Ward did not specify the nature of the errors, did not require any corrections to be made before notarizing, and did not prevent the flawed affidavit from being forwarded to jail personnel or the court.

63. Defendant Ward's statements demonstrated that he had actual knowledge, at the moment he notarized the affidavit, that the document was inaccurate and incomplete. Despite this knowledge, Defendant Ward took no steps to ensure that any corrections were made and allowed the defective affidavit to be processed as the official probable-cause basis for Plaintiff's detention. Plaintiff heard Defendant Ward acknowledge the existence of errors immediately after notarizing the affidavit, confirming that the affidavit was knowingly approved in a flawed condition.

64. These omissions, distortions, contradictions, and factual impossibilities prevented a neutral magistrate from evaluating the true circumstances of the arrest and concealed the unconstitutional warrantless entry into Plaintiff's home. Under *Franks v. Delaware*, these omissions constitute a reckless disregard for the truth and invalidate the probable-cause determination.

65. The CPC affidavit also misrepresented the physical mechanics of the arrest in a manner that concealed the warrantless home entry. Defendant Mares wrote that Plaintiff "opened the front door and was told to step outside," followed by "D1 then proceeded to try and close the door on officers but was unsuccessful." This phrasing masks the fact that officers physically prevented Plaintiff from closing her own door and

crossed the residential threshold to seize her. The affidavit omits any mention of officers blocking the door, forcing it open, or entering Plaintiff's home, despite these actions being essential facts for a lawful probable-cause determination.

66. The affidavit's description of the arrest falsely implies that Plaintiff was outside or at the threshold when seized. In reality, Plaintiff remained fully inside her home, and officers crossed the constitutional boundary of the doorway to effectuate the arrest. By omitting this threshold breach, Defendant Mares concealed a warrantless entry that violated clearly established Fourth Amendment law under *Payton v. New York*, which prohibits warrantless home entry for routine arrests absent voluntary consent, emergencies or exigent circumstances.

67. The affidavit further omitted that the underlying domestic-violence allegation occurred approximately twenty-three hours earlier. No emergency, hot pursuit, or exigent circumstance existed at the time of the arrest. By omitting the 23-hour delay, Defendant Mares concealed the fact that officers lacked any lawful justification to breach Plaintiff's home to arrest her for a stale misdemeanor allegation.

68. These omissions and distortions were material to the probable-cause determination. Had the affidavit disclosed the warrantless entry, the physical impossibilities, and the absence of exigent circumstances, no magistrate could have lawfully approved Plaintiff's detention.

**Theft of Plaintiff's Schedule II Medication**

69. On December 1, 2024, Plaintiff filed a formal report documenting the theft of her Schedule II Vyvanse medication. Critically, while Plaintiff was physically inside the Del City Police Department lobby waiting to file this felony medication theft report, Defendant Mares, the initial arresting officer, was personally present inside the facility. Defendant Mares observed Plaintiff, positioned himself in her immediate vicinity, and attempted to physically stare down and intimidate Plaintiff.

70. Plaintiff is informed and believes, and thereupon alleges, that Defendant Mares intentionally injected himself into the processing of the newly initiated theft file, actively communicated with reporting personnel regarding Plaintiff's cross-reported domestic violence case, and improperly influenced or manipulated the initial administrative handling and coding of the theft report to insulate his own unlawful arrest narrative and failure to secure the scene, from professional scrutiny.

71. Captain Shawn Courtney took the report. Defendant Griggs was assigned as the investigator for this case.

72. Plaintiff reported that two bottles containing fifty-six (56) pills of Vyvanse 70 mg were missing from her locked bedroom. The reporting party was the only person with the access code and the only person granted unsupervised entry.

73. Under 63 O.S. § 2-403, the theft of any Schedule II Controlled Dangerous Substance is an automatic felony.

74. Rather than initiating mandatory felony-tracking and investigative procedures, Defendant Griggs and the DCPD deceptively misclassified and downgraded the investigation into a minor misdemeanor case.

75. This misclassification diverted the case away from mandatory felony-tracking procedures and concealed the reporting party's motive to fabricate allegations.

**Investigator Griggs's Suppression of Exculpatory Evidence**

76. Defendant Griggs was assigned to both the domestic-violence case and the "mandatory felony case that Defendants unlawfully misclassified and downgraded as a misdemeanor" theft case. On January 24, 2025 Plaintiff called to speak with Defendant Griggs to ask about when they would be collecting the evidence for the medicine theft case. He refused to collect the evidence, stating it was "old" or "out," despite the report being filed within four days. He stated that he had higher priority cases to investigate like "murder and physical domestic violence." Literally referencing the DV case as an example of one of the cases having a higher priority than the medicine theft case.

77. Defendant Griggs stated he couldn't do anything unless the suspect confessed to stealing 2 bottles of medication, and he made no attempt to contact the suspect.

78. Defendant Griggs forwarded only the domestic-violence case, without conducting an investigation, to the District Attorney without forwarding the theft case as well. The reporting party in the DV was the sole and primary suspect in the theft case. Thus, depriving prosecutors of exculpatory evidence regarding the reporting party's motive and credibility.

79. Plaintiff endured 317 days of unconstitutional liberty deprivation before the case was dismissed with prejudice.

**February 2025 Unauthorized Police Intrusion**

80. Between February 13–16, 2025, Del City officers conducted an unauthorized nighttime callout at Plaintiff's residence despite Plaintiff being on active bond.

81. Officers knocked aggressively, walked the perimeter, and attempted contact without lawful basis. Plaintiff was asleep and did not interact with them; another resident informed her of the intrusion.

82. This incident caused Plaintiff severe distress and compelled her to install exterior security cameras to protect her home from further harassment.

**Reputational Damage and Record Distortion**

83. The domestic-violence charge was published on the public docket as a high-severity offense under 21 O.S. § 644.1, rather than a standard misdemeanor under 21 O.S. § 644(C).

84. This erroneous escalation caused severe reputational harm, deterred legal representation, and amplified Plaintiff's emotional distress.

85. These harms were proximately caused by the initial unlawful arrest and the officers' failure to conduct a lawful investigation.

**Systemic Failures and Municipal Liability**

86. The City of Del City failed to train officers on:

87. The constitutional limits of warrantless home entry.

88. Mandatory domestic-violence protocols under 22 O.S. § 60.16. B(1)B(2)

89. Proper handling of Schedule II narcotics theft.

90. Preservation of exculpatory evidence.

91. These failures directly caused Plaintiff's unlawful home entry, arrest, medical deprivation, reputational harm, and prolonged liberty restriction.

**The Custom of Administrative Insulation and Refusal to Investigate**

92. On February 10, 2026, Plaintiff filed a formal Internal Affairs Bureau (IAB) complaint detailing the extensive operational, statutory, and constitutional misconduct of the involved officers. Following the explicit directions published on the City of Del City's official public website, Plaintiff transmitted the formal complaint via electronic mail directly to Interim Police Chief Whitney Taylor.

93. After receiving no response, acknowledgment, or tracking number, Plaintiff transmitted a formal follow-up inquiry to Interim Chief Taylor on February 19, 2026. Both structural submittals received no acknowledgment, response, or tracking number from the Del City Police Department.

94. In a direct effort to break through this administrative insulation, February 25, 2026, Plaintiff transmitted a formal executive escalation email directly to Del City Manager J.D. Hock, who possesses final operational and supervisory executive authority over the

police department. Plaintiff's email explicitly put the City Manager on notice that her internal affairs complaints were not being acknowledged.

95. City Manager J.D. Hock did not acknowledge, respond, or provide a tracking number for Plaintiff's executive escalation. To date, the Defendant City has not logged, tracked, or initiated an investigation into Plaintiff's formal IAB complaints, demonstrating a custom of deliberate indifference and a systemic disregard for supervising, reviewing, or addressing formal citizen complaints regarding officer misconduct.

**COUNT I – Fourth Amendment: Warrantless Entry into the Home**

(42 U.S.C. § 1983 – Against Defendants Mares and Reichert, Individually)

96. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

97. The Fourth Amendment to the United States Constitution guarantees the right of individuals to be secure in their homes against unreasonable searches and seizures. Under clearly established law, warrantless entry into a home is presumptively unconstitutional absent consent or exigent circumstances.

98. Defendants Mares and Reichert escalated the encounter by issuing threats to forcibly breach Plaintiff's door if she did not comply, causing Plaintiff to open her door solely in response to coercion and fear.

99. On November 26, 2024, Defendants Mares and Reichert approached Plaintiff's residence and demanded that she exit her home. Plaintiff remained fully inside her

residence and attempted to close her door, exercising her constitutional right to terminate a warrantless encounter.

100. Plaintiff did not consent to any entry into her home. No warrant had been sought or obtained. No exigent circumstances existed.

101. Despite the absence of a warrant, consent, or lawful justification, Defendants Mares and Reichert forcibly pushed Plaintiff's door open, crossed the residential threshold, made a deep physical entry into Plaintiff's home, and seized Plaintiff inside her residence.

102. Defendants' warrantless entry violated clearly established Fourth Amendment law, including the bright-line rule articulated in Payton v. New York, 445 U.S. 573 (1980), which prohibits warrantless home entry for routine arrests.

103. No reasonable officer could have believed that forcing entry into Plaintiff's home under these circumstances was lawful. Defendant Mares and Reichert acted intentionally, recklessly, and with deliberate indifference to Plaintiff's constitutional rights.

104. As a direct and proximate result of Defendant Mares and Reichert unconstitutional conduct, Plaintiff suffered physical restraint, emotional trauma, loss of liberty, reputational harm, and other damages to be proven at trial.

WHEREFORE, Plaintiff seeks judgment against Defendants Mares and Reichert for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT II – Fourth Amendment: Unlawful Arrest Without Probable Cause**

(42 U.S.C. § 1983 – Against Defendants Mares and Reichert, Individually)

105. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

106. The Fourth Amendment prohibits the seizure or arrest of any person without probable cause. Probable cause exists only when the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent person in believing that the suspect has committed a crime.

107. At the time Defendant Mares and Defendant Reichert seized and arrested Plaintiff inside her home on November 26, 2024, no probable cause existed to believe Plaintiff had committed domestic assault or any other criminal offense.

108. Defendant Mares and Defendant Reichert relied exclusively on the reporting party's inconsistent, incomplete, and materially false statements, despite numerous red flags indicating unreliability, including:

a. The reporting party's drug seeking behavior

b. The reporting party's documented history of aggression and abuse against Plaintiff;

c. the reporting party's prior arrest for assaulting Plaintiff, resisting arrest, and biting a responding officer.

109. While handcuffed and confined in the rear of the police cruiser, Plaintiff explicitly attempted to put Defendant Mares on notice of the reporting party's extensive history of domestic violence, drug-seeking behavior, and prior criminal acts against Plaintiff.

110. In direct violation of his mandatory duty to evaluate the totality of the circumstances and identify the dominant aggressor under Oklahoma law, Defendant Mares intentionally and aggressively shut down Plaintiff's attempts to provide this critical exculpatory data, stating verbatim: "I am not gonna argue with you. I am not gonna talk to you!"

111. By explicitly refusing to hear, document, or investigate Plaintiff's firsthand exculpatory disclosures, Defendant Mares acted with deliberate indifference, intentionally insulating his unconstitutional arrest from mandatory investigative protocols.

112. Defendant Mares and Defendant Reichert failed to perform mandatory statutory domestic violence procedures under 22 O.S. § 60.16, including running names, checking for protective orders, conducting a dominant aggressor analysis, or performing lethality assessments. Had they done so, they would have discovered Plaintiff's recent and active Victim Protective Order against her husband and the reporting party's documented history of violence.

Defendant Mares and Defendant Reichert did not run the names of either party, did not interview Plaintiff, and Defendant Mares aggressively refused to verify the material statements Plaintiff made while confined in the cruiser. These omissions prevented Defendants from discovering readily available exculpatory information, including the

reporting party's inconsistent statements, her drug-seeking behavior, her documented history of aggression, and the absence of physical injuries consistent with her allegations. As a result, Defendant Mares and Defendant Reichert proceeded under an unverified, reckless, and premature theory of the case.

113. Defendant Mares failed to recognize or assess obvious signs that the reporting party was under the influence of a controlled substance. Despite her erratic behavior, inconsistent statements, and agitation, Defendant Mares conducted no impairment screening and made no effort to evaluate her reliability as a witness.

114. Defendants Mares and Defendant Reichert escalated the encounter by threatening to break down Plaintiff's door. They then forcibly breached Plaintiff's door based on a fundamental misunderstanding of Oklahoma's 72-hour domestic-violence arrest authority outlined in 22 O.S. § 60.16 and 22 O.S. § 196. These statutes permit warrantless arrests "anywhere, including inside the home." However, these statutes do not override the Fourth Amendment's requirements for a warrant, exigent circumstances, consent, or an actual emergency before crossing the threshold of a home to effectuate a warrantless arrest. Defendant Mares and Defendant Reichert acted on an incorrect and unconstitutional interpretation of their authority and entered Plaintiff's home without any lawful justification.

115. No reasonable officer could have believed that probable cause existed to arrest Plaintiff under these circumstances. Defendant Mares and Defendant Reichert acted

intentionally, recklessly, and with deliberate indifference to Plaintiff's clearly established constitutional rights.

116. As a direct and proximate result of Defendants' unlawful arrest, Plaintiff suffered physical restraint, emotional trauma, deep humiliation, severe and irreparable reputational harm, loss of liberty, and other damages to be proven at trial.

WHEREFORE, Plaintiff seeks judgment against Defendants Mares and Defendant Reichert for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT III – Fourth Amendment: Judicial Deception / Material Omissions**

(42 U.S.C. § 1983 – Against Defendants Mares and Reichert, Individually)

117. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

118. The Fourth Amendment prohibits warrantless entry into a home absent a warrant, valid consent, exigent circumstances, or an actual emergency. Under *Payton v. New York*, probable cause alone does not authorize crossing the threshold of a private residence. This protection applies to state and local officers through the Fourteenth Amendment's incorporation doctrine.

119. The Fourth Amendment prohibits officers from securing arrests or criminal charges through deliberate falsehoods or reckless disregard for the truth. Under *Franks v. Delaware*, 438 U.S. 154 (1978), this prohibition encompasses both affirmative misstatements and material omissions necessary to a probable cause determination.

The Supreme Court clarified in *Manuel v. City of Joliet*, 580 U.S. 291 (2017), that challenges to pretrial detention based on such fabricated evidence or material omissions must be analyzed under the Fourth Amendment, extending its protections past the start of formal legal process. Furthermore, the Supreme Court in *Thompson v. Clark*, 596 U.S. 36 (2022), solidified this framework by formally recognizing a Fourth Amendment claim for malicious prosecution, anchoring the right to be free from groundless criminal charges secured through corrupted evidence squarely within the Fourth Amendment

120. On November 26, 2024, Defendant Mares and Defendant Reichert entered Plaintiff's home without a warrant, without consent, and without any exigent circumstances or emergency. Plaintiff repeatedly informed Defendants that they did not have permission to enter her home. Defendants physically positioned themselves to breach the residence and attempted to order Plaintiff out, to which she said "No" resulting in an unlawful constructive entry and a seizure of the Plaintiff.

121. No facts existed that would support exigency. Defendants observed no ongoing violence, no immediate threat to life, no destruction of evidence, and no emergency requiring immediate entry. The reporting party was outside the home, uninjured, and in no danger.

122. Defendants escalated the encounter and threatened to forcibly breach Plaintiff's door based on a fundamental misunderstanding of Oklahoma's 72-hour domestic-violence arrest authority outlined in 22 O.S. § 60.16 and 22 O.S. § 196. These statutes permit warrantless arrests "anywhere, including inside the home," but they do not override,

and cannot constitutionally supersede, the Fourth Amendment's requirements for a warrant, exigent circumstances, consent, or an actual emergency before crossing the threshold of a home.

123. Defendant Mares and Defendant Reichert acted on an incorrect interpretation of their authority and entered Plaintiff's home without any lawful justification. Their threats to break down the door and ultimate breach and assertion of authority constitute an unlawful warrantless entry and seizure in violation of clearly established constitutional law.

124. Defendant Mares and Reichert further omitted the circumstances of their warrantless entry tactics from the Criminal Probable Cause Affidavit "CPC affidavit", despite its material relevance to the legality of the arrest and the circumstances surrounding the encounter. This omission prevented judicial review of the constitutional violation and contributed to Plaintiff's unlawful seizure.

125. Defendant Mares and Defendant Reichert also knowingly, intentionally, or with reckless disregard for the truth, omitted other material facts necessary for an accurate probable-cause determination, including:

a. Their failure to run names or check for protective orders;

b. Their refusal to interview Plaintiff or verify her statements made from the cruiser;

c. The reporting party's inconsistent statements;

d. The reporting party's drug-seeking behavior;

e. The reporting party's documented history of aggression toward Plaintiff;

f. The reporting party's prior arrest for assaulting Plaintiff, resisting arrest, and biting the responding officer; and

g. The inconsistencies between the reporting party's actual injuries and their alleged injuries.

126. The aforementioned omissions were material to the finding of probable cause. Had Defendant Mares included these material, exculpatory facts in the CPC affidavit, and had they removed the tainted evidence, the affidavit would have been wholly unsupportable, and a detached magistrate would have found a total absence of probable cause to detain or charge Plaintiff.

127. Defendant Mares' unlawful actions went far beyond mere operational incompetence. Having been explicitly informed by Plaintiff inside the police cruiser of the reporting party's history of violence against Plaintiff, Defendant Mares possessed actual, subjective knowledge that his underlying basis for probable cause was severely compromised. To insulate himself from professional liability for a reckless arrest and a warrantless home entry, Defendant Mares intentionally and maliciously drafted an affidavit that masked the physical mechanics of the arrest in order to mislead the reviewing magistrate.

128. No reasonable officer could believe that a warrantless home entry is permissible without a warrant, consent, exigent circumstances, or an emergency. Nor could a reasonable officer believe that such an entry, or other material exculpatory facts, may be omitted from a probable-cause affidavit. Defendant Mares' conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known, stripping them of any entitlement to qualified immunity.

129. As a direct and proximate result of Defendant Mares' unlawful entry, material omissions, and violation of Plaintiff's Fourth Amendment rights, Plaintiff suffered emotional trauma, loss of liberty, reputational harm, legal expenses, and other damages to be proven at trial.

WHEREFORE, Plaintiff seeks judgment against Defendant Mares and Defendant Reichert for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT IV – Fourth Amendment: Supervisory Liability / Deliberate Indifference**

(42 U.S.C. § 1983 – Against Defendants Ward Individually)

130. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

131. The Fourth Amendment prohibits supervisory law enforcement officials from acting with deliberate indifference to the constitutional rights of citizens by authorizing, validating, or permitting the processing of sworn affidavits and arrest paperwork known to contain material omissions, fabrications, or a reckless disregard for the truth.

132. Under clearly established federal and Tenth Circuit law, a supervisory officer is individually liable under 42 U.S.C. § 1983 where an "affirmative link" exists between the supervisor's personal participation, exercise of control, or failure to supervise, and the resulting constitutional deprivation suffered by the plaintiff.

133. Defendant Chauncey Ward, acting under color of law in his individual capacity, knowingly participated in, established the affirmative link to, and directly authorized the judicial deception that formed the basis of Plaintiff's unlawful arrest and 317-day prolonged deprivation of liberty.

134. At all times relevant to this action, Defendant Ward served simultaneously as the supervising night Watch Commander and the notary public responsible for certifying and validating the Affidavit of Probable Cause (CPC Affidavit) for DCPD Case #24-29275.

135. In this dual capacity as an active law enforcement supervisor and a notary public, Defendant Ward possessed an absolute, non-discretionary constitutional duty to ensure that the affidavit compiled by his subordinate officer was accurate, factually complete, and legally sufficient before utilizing his state-granted authority to validate and forward the document into the judicial system.

136. Prior to affixing his notary seal and signature, Defendant Ward conducted a substantive review of the text of the CPC Affidavit. Following his review, Defendant Ward explicitly noted that errors existed and commented in Plaintiff's presence that "minor corrections" needed to be made to the document.

137. As per DCPD policy 323.7 (REVIEW AND CORRECTIONS) Supervisors shall review reports for content and accuracy. If a correction is necessary, the reviewing supervisor should return the report stating the reasons for rejection.

138. Despite possessing actual, subjective knowledge that the affidavit was inaccurate and incomplete at the exact moment of execution, Defendant Ward knowingly notarized and authorized the processing of the defective CPC Affidavit. Rather than withholding his approval until the defects were cured, Defendant Ward handed the notarized uncorrected document to Defendant Mares and stated that Defendant Mares could "fix it when he came back."

139. Defendant Ward took no subsequent steps to verify, review, or ensure that any corrections were ever made, intentionally or with reckless disregard permitting a facially flawed and unconstitutional document to be processed and forwarded to jail personnel, the District Attorney, and the District Court.

140. The CPC Affidavit approved by Defendant Ward contained flagrant material omissions and architectural contradictions that any reasonable law enforcement supervisor would have immediately recognized as a violation of the Fourth Amendment. Most critically, the text completely omitted the warrantless residential doorway threshold breach executed by officers, thereby masking an illegal home entry and preventing a reviewing magistrate from evaluating the true legality of the arrest under Payton v. New York, 445 U.S. 573 (1980).

141. The affidavit approved by Defendant Ward further failed to specify whether Plaintiff complied with or refused commands to step outside, leaving a critical constitutional gap designed to conceal the fact that officers physically obstructed Plaintiff's doorway and forced entry into her home to execute a non-emergency misdemeanor arrest nearly 23 hours after the underlying alleged incident.

142. The deceptive and reckless conduct of Defendant Ward was a direct and proximate cause of the ongoing restriction of Plaintiff's liberty. Had Defendant Ward executed his mandatory supervisory duties and rejected the fraudulent, incomplete affidavit, the groundless arrest processing would have ceased. Instead, as a direct result of Defendant Ward's authorization, the defective paperwork entered the judicial

machinery, causing Plaintiff to endure 317 days of an unconstitutional deprivation of liberty.

143. No reasonable law enforcement supervisor could believe that reviewing a probable cause statement, identifying errors within it, and yet intentionally notarizing and processing that flawed, omission-filled document with an instruction to "fix it later" was constitutionally permissible.

144. Defendant Ward's supervisory liability and deliberate indifference are explicitly demonstrated by his administrative review, approval, and ratification of the underlying prosecution file containing the unnotarized, facially void 'Authority for Release of Information' form. As the reviewing shift commander / supervisor over Defendant Mares, Defendant Ward possessed a non-discretionary operational duty to audit and inspect all incoming scene documentation to ensure technical compliance with basic data-privacy protocols, state notary statutes, and federal HIPAA frameworks before authorizing the case file to progress.

145. Defendant Ward's administrative execution of an institutional approval on a file containing an unnotarized and unauthorized privacy waiver, witnessed by his subordinate and signed by an adversarial third party to pierce an adult citizen's private medical files, constitutes an absolute abandonment of mandatory supervisory protocols. By approving a facially corrupted investigative file rather than rejecting the template and ordering a disciplinary intervention, Defendant Ward personally ratified his subordinate's constitutional misconduct and directly enabled the fraudulent file to

be forwarded to prosecutors, actively expanding a chain of custody that exposed Plaintiff to an ongoing risk of severe personal data exposure.

146. Defendant Ward's supervisory deliberate indifference is further cemented by the absolute lack of notation regarding the privacy waiver inside the subordinate officer's report narrative. Because the incident report contained zero mention of an 'Authority for Release of Information' form, Defendant Ward was presented with an evidence packet that flatly contradicted the official text file. Under Del City Policy guidelines, a supervisor owes a mandatory, non-discretionary operational duty to audit and reject all reports featuring missing documentation or unexplained attachments. By rubber-stamping the file as complete rather than bouncing it back for a protocol violation, Defendant Ward actively approved an unconstitutional administrative blind-spot, demonstrating a total failure to supervise that stripped him of Qualified Immunity.

147. WHEREFORE, Plaintiff seeks judgment against Defendant Ward for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT V – Fourth and Fourteenth Amendments: Fabrication of Evidence, Reckless Investigation, and Deceptive Suppression of Exculpatory Evidence**

(42 U.S.C. § 1983 – Against Defendant Christopher Griggs, Individually)

148. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

149. The Fourth and Fourteenth Amendments prohibit law enforcement investigators from fabricating evidence, intentionally manipulating case files, conducting reckless

investigations, or suppressing critical exculpatory evidence to unconstitutionally restrict a citizen's liberty.

150. While law enforcement officers generally possess broad discretion regarding the allocation of investigative resources, an investigator is strictly and unconditionally prohibited from utilizing that discretion as a deceptive shield to intentionally suppress cross-reported files, conceal a witness's direct motive to fabricate allegations, or insulate a groundless prosecution from judicial scrutiny.

151. On or about December 1, 2024, Plaintiff filed a formal report documenting the theft of fifty-six (56) pills of her prescribed Schedule II Controlled Dangerous Substance (Vyvanse) from her locked bedroom by the reporting party. Under 63 O.S. § 2-403, the theft of any amount of a Schedule II narcotic is a mandatory felony offense.

152. Defendant Griggs was specifically assigned as the lead investigator over both the underlying domestic violence allegation against Plaintiff and the cross-reported felony medication theft case involving the exact same parties.

153. Rather than initiating mandatory felony-tracking and evidence-collection procedures, Defendant Griggs and the Del City Police Department deceptively misclassified and downgraded the theft investigation into a minor misdemeanor case for the express purpose of burying the file and shielding it from the District Attorney's review.

154. On January 24, 2025, Plaintiff contacted Defendant Griggs via telephone to inquire about when physical evidence would be collected and when the suspect would be interviewed regarding the stolen narcotics.

155. During this conversation, Defendant Griggs explicitly refused to collect the physical evidence or interview the primary suspect, falsely asserting that the evidence was "old" or "out," despite the formal report having been filed within four days of the incident.

156. Defendant Griggs further admitted his discriminatory and manipulative intent by explicitly stating to Plaintiff that he had higher priority cases to investigate, specifically referencing "murder and physical domestic violence," thereby openly using the cross-reported case against Plaintiff as his justification to suppress the theft investigation.

157. Defendant Griggs' justification is exposing a fatal contradiction: if the physical domestic violence case was of such a paramount "higher priority," then a proper investigation of that case textually and statutorily warranted, at an absolute minimum, a basic, routine prior violent incidence name check through the Oklahoma Law Enforcement Telecommunications System (OLETS) as explicitly required by Oklahoma's domestic violence investigation protocols.

158. Had Defendant Griggs executed this mandatory protocol, the OLETS and OSBI query would have instantly revealed the reporting party's prior formal arrest history for assaulting law enforcement when they responded to a domestic violence call where she was actively assaulting Plaintiff. Furthermore, had Defendant Griggs performed a standard regional query through multi-jurisdictional data-sharing platforms, specifically the AIMS and COPLINK networks, such a query would have instantly revealed an extensive, documented pattern of local Computer-Aided Dispatch (CAD) and Records Management System (RMS) entries within neighboring jurisdictions, detailing the reporting party's history as Plaintiff's prior abuser. Defendant Griggs' total

failure to perform this routine search using available AIMS and COPLINK networks, combined with his intentional suppression of the cross-reported theft file, constitutes a reckless abandonment of non-discretionary procedures designed to ensure that all material exculpatory evidence is compiled and forwarded to the District Attorney as constitutionally required.

159. Defendant Griggs possessed an absolute, non-discretionary constitutional duty to analyze the totality of the circumstances and disclose the existence of the cross-reported narcotics theft case to the District Attorney, as the reporting party in the domestic violence case was the sole and primary suspect in the felony theft case.

160. Had Defendant Griggs performed a basic, routine investigation into either case file, this information would have been readily available. This history constituted materially important evidentiary context vital to determining motive and a proper dominant aggressor analysis, under the totality of the circumstances for both cases.

161. Defendant Griggs knowingly, recklessly, and with deliberate indifference breached his mandatory duties by forwarding only the unverified domestic violence file to the District Attorney while intentionally withholding and suppressing the cross-reported theft file and the reporting party's history of domestic abuse.

162. Defendant Griggs' bad-faith investigative manipulation and reckless indifference are further documented by his formal transmission of this unnotarized, fraudulently executed 'Authority for Release of Information' form to the District Attorney's office as an official part of the state's prosecution file.

163. As the lead investigator over both cross-reported files, Defendant Griggs possessed a non-discretionary operational duty to review, audit, and vet the integrity of all incoming scene documentation before utilizing it to maintain a criminal prosecution. Defendant Griggs' decision to forward an unnotarized privacy waiver, which contains Plaintiff's name and the reporting party's name written in Defendant Mares' handwriting, bears Defendant Mares' signature as a witness, and features a signature that appears to be the reporting party's signature, demonstrates that Defendant Griggs either: (a) completely abandoned basic investigative review standards by blindly rubber-stamping a corrupt file, or (b) intentionally forwarded known fraudulent documentation to the District Attorney to artificially bolster a groundless misdemeanor charge and insulate his colleagues from professional scrutiny.

164. By forwarding fraudulent documentation that purports to authorize the release of an adult's confidential records based entirely on a third party's signature, Defendant Griggs engaged in a reckless abandonment of objective investigative procedures. This deceptive transmission not only unconstitutionally expanded the scope of a groundless investigation, but actively exposed Plaintiff to an unquantifiable risk of a severe personal data and identity breach. No reasonable investigator could believe that processing a facially invalid privacy waiver to pierce an adult citizen's secure medical file was constitutionally permissible, thereby clearly stripping Defendant Griggs of any entitlement to Qualified Immunity.

165. Defendant Griggs' intentional suppression completely deprived prosecutors of explosive, material exculpatory evidence regarding the reporting party's direct criminal

motive to fabricate her domestic violence allegations to evade felony prosecution for the theft of Plaintiff's medication.

166. The deceptive, reckless, and manipulative conduct of Defendant Griggs was the moving force behind the ongoing, unconstitutional restriction of Plaintiff's liberty. Had Defendant Griggs disclosed the cross-reported file and the abuse history, the prosecution against Plaintiff would have immediately collapsed. Instead, Plaintiff endured 317 days of an unconstitutional deprivation of liberty before the case was dismissed with prejudice in the best interest of justice.

167. No reasonable investigator could believe that misclassifying a statutory felony, fabricating a fraudulent "priority" excuse to justify a total failure to collect evidence, and intentionally suppressing a cross-reported history of abuse to insulate a groundless prosecution was constitutionally permissible. Defendant Griggs acted maliciously, intentionally, and with reckless disregard for Plaintiff's clearly established constitutional rights, stripping him of any entitlement to Qualified Immunity.

**WHEREFORE,** Plaintiff seeks judgment against Defendant Griggs for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT VI – Fourth Amendment: Malicious Prosecution**

**(42 U.S.C. § 1983 – Against Defendants Mares, Ward, and Griggs, Individually)**

168. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

169. The Fourth Amendment guarantees individuals the right to be free from groundless criminal prosecutions and unreasonable, prolonged deprivations of liberty without probable cause.

170. Under the Supreme Court's holding in *Thompson v. Clark*, 596 U.S. 36 (2022), a plaintiff states a valid Fourth Amendment claim for malicious prosecution under § 1983 by demonstrating that: (a) a criminal proceeding was initiated or continued against them; (b) the proceeding was maintained without probable cause; (c) the proceeding terminated in the plaintiff's favor without a conviction; and (d) the plaintiff suffered a deprivation of liberty.

171. Defendants Mares and Ward initiated the groundless criminal prosecution against Plaintiff by fabricating, verifying, and processing a fraudulent and deceptive Probable Cause Affidavit that contained flagrant material omissions, physical impossibilities, and a complete concealment of an unconstitutional, warrantless entryway breach.

172. Defendant Investigator Griggs intentionally and maliciously maintained and prolonged the groundless criminal prosecution against Plaintiff by deceptively misclassifying a mandatory statutory felony medication theft as a misdemeanor, refusing to collect physical evidence, and intentionally suppressing this cross-reported exculpatory evidence file from the District Attorney.

173. As a direct and proximate result of the collective actions of Defendants Mares, Ward, and Griggs, criminal charges were formally filed and maintained against Plaintiff in the District Court of Oklahoma County Case No. CM 2025-544.

174. The criminal prosecution was initiated, maintained, and pursued entirely without probable cause, relying exclusively on corrupted, manipulated evidence, an uncorrected affidavit, and suppressed cross-reports.

175. On October 9, 2025, Plaintiff's criminal case was dismissed with prejudice in the best interest of justice, fully satisfying the constitutional requirement of a favorable termination under Thompson v. Clark, 596 U.S. 36 (2022).

176. As a direct and proximate result of the Defendants' malicious prosecution, Plaintiff endured an unconstitutional deprivation of her personal liberty for 317 days, severe emotional trauma, profound humiliation, reputational harm, and extensive financial loss due to legal defense expenses.

177. The individual Defendants acted intentionally, maliciously, and with reckless disregard for Plaintiff's clearly established Fourth Amendment rights. No reasonable officer could believe it was lawful to initiate or maintain a 317-day criminal prosecution based on fabricated documentation and suppressed exculpatory evidence, thereby stripping Defendants Mares, Ward, and Griggs of any entitlement to Qualified Immunity.

**WHEREFORE,** Plaintiff seeks judgment against Defendants Mares, Ward, and Griggs for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT VII- Fourth Amendment: Excessive Force / Unreasonable Seizure**

**(42 U.S.C. § 1983 – Against Defendants Mares and Reichert, Individually)**

178. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

179. The Fourth Amendment prohibits the use of excessive force during a seizure. Under *Graham v. Connor*, 490 U.S. 386 (1989), officers may use only the amount of force that is objectively reasonable under the circumstances. The reasonableness of force is evaluated by considering: (1) the severity of the alleged crime, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting or attempting to evade arrest.

180. On November 26, 2024, Defendants Mares and Reichert used unreasonable and excessive force against Plaintiff during a warrantless encounter inside her home. Plaintiff posed no threat, made no aggressive movements, and did not resist. Plaintiff remained fully inside her residence and attempted only to close her door, a lawful exercise of her constitutional right to terminate a warrantless threshold encounter.

181. Once inside the home, Defendants seized Plaintiff using physical force completely disproportionate to any legitimate law-enforcement need. Defendants aggressively forced the door open, overrode Plaintiff's physical boundaries, crushed Plaintiff between the moving front door and a rigid interior wall, grabbed both of her arms, and twisted them behind her back to apply mechanical handcuffs tightly.

182. At the time of this physical seizure, Plaintiff was actively suffering from a severe respiratory illness and was heavily medicated, leaving her visibly fatigued, disoriented, and physically vulnerable. Although Plaintiff's acute medical condition made her completely defenseless and incapable of resisting, Defendants failure to assess her apparent physical vulnerability resulted in a disproportionate and punitive application of force against a non-resisting, disabled individual.

183. Plaintiff did not resist arrest, did not threaten officers, and did not attempt to flee. The alleged underlying offense was a stale, day-old misdemeanor domestic violence allegation completely unsupported by visible injuries or physical evidence. Under the objective standards of Graham v. Connor, the deployment of physical violence to breach a home and restrain a non-threatening, vulnerable resident was wholly unjustified.

184. No reasonable officer could believe that forcing open a residential door, physically overpowering a vulnerable homeowner inside her own residence, and tightly handcuffing a non-resisting citizen without a warrant or exigent circumstances was constitutionally permissible. Defendants' conduct violated clearly established Fourth Amendment protections, removing any entitlement to Qualified Immunity.

185. As a direct and proximate result of Defendants' excessive force and unreasonable seizure, Plaintiff suffered physical pain, emotional trauma, respiratory distress, loss of liberty, reputational harm, and other damages to be proven at trial.

WHEREFORE, Plaintiff seeks judgment against Defendants Mares and Defendant Reichert for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT VIII– Fourteenth Amendment: Deliberate Indifference to Serious Medical Needs**

(42 U.S.C. § 1983 – Against Defendants Mares and Reichert, Individually)

186. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

187. The Fourteenth Amendment prohibits law-enforcement officers from acting with deliberate indifference to the serious medical needs of individuals in their custody.

Once a person is seized and restrained, officers have a constitutional obligation to provide reasonable medical assistance and may not ignore obvious signs of medical distress.

188. At all times relevant to this action, Defendants Mares and Reichert possessed actual, subjective knowledge that Plaintiff was actively experiencing significant, respiratory distress. Plaintiff was ill, and heavily medicated, leaving her visibly fatigued, and physically vulnerable at the scene.

189. After Plaintiff was handcuffed and placed in the cruiser, she informed Defendant Mares that she was having difficulty breathing and urgently needed her rescue inhaler. Plaintiff explained that she had been seen at urgent care less than six hours earlier and had been prescribed antibiotics, steroids, and an additional inhaler that was not yet available for pickup. Plaintiff further advised that she relied on a home nebulizer four times per day, a portable nebulizer, a CPAP machine, and multiple prescription medications to manage to manage her life-threatening respiratory condition, warning them: "I can get sick and die from this."

190. Plaintiff informed Defendant Mares that her rescue inhaler was located inside her locked bedroom and that the reporting party was the only person other than Plaintiff who knew the electronic keypad code. Plaintiff requested that the reporting party provide the correct code to the young woman already inside the residence so the inhaler could be retrieved without allowing the reporting party into Plaintiff's home.

191. Defendant Mares and Defendant Reichert instructed the reporting party to provide the code, but the reporting party repeatedly supplied incorrect numerical sequences.

Rather than applying basic investigative skepticism, Defendant Mares and Defendant Reichert accepted these incorrect codes and attributed the failed attempts to the young woman inside the residence.

192. After these failed attempts, Defendant Mares made a deliberate, reckless, and unauthorized decision regarding Plaintiff's home and property. Without Plaintiff's knowledge or consent, Defendant Mares instructed and authorized the reporting party to enter Plaintiff's private residence and locked bedroom unescorted to retrieve Plaintiff's rescue inhaler.

193. The reporting party immediately bypassed the electronic keypad lock and successfully opened the secure door on her very first attempt, revealing that her prior dissemination of non-functioning codes was a deliberate ruse to manipulate law enforcement into granting her unsupervised access to Plaintiff's private quarters. The reporting party subsequently exited the residence without Plaintiff's inhaler.

194. Defendant Mares and Defendant Reichert made no further effort to obtain Plaintiff's prescribed medication or secure the compromised scene

195. This information was relayed to Plaintiff by the young lady who was staying in Plaintiff's house at the time once I was released on bond.

196. Despite knowing Plaintiff had no rescue inhaler, had recently been treated at an urgent care facility, and relied on multiple respiratory devices and prescription medications, Defendants Mares and Reichert failed to summon emergency medical assistance or transport Plaintiff to a hospital. Instead, Defendant Mares repeatedly dismissed Plaintiff's medical crisis by stating that "County has inhalers," thereby attempting to

utilize the Oklahoma County Detention Center as an administrative shield to evade his immediate on-scene constitutional obligations, while failing to communicate any of Plaintiff's medical conditions, acute vulnerabilities, or the seriousness of her needs to processing personnel

197. As a direct result of Defendants' collective operational failures and complete lack of medical communication, Plaintiff was subsequently denied access to all of her prescribed medications, life-sustaining medical machinery, and physical therapies for three consecutive days of her four-day confinement inside the Oklahoma County Detention Center over the Thanksgiving holiday weekend. Without her daily medicines, CPAP, steroids, antibiotics, and four-times-daily nebulizer treatments, Plaintiff narrowly avoided progressing into severe status asthmaticus solely because another inmate shared a rescue inhaler during those initial days of confinement. On a prior occasion when Plaintiff experienced similar respiratory distress without timely access to medication, she required hospitalization in an intensive care unit for approximately one week.

198. Defendants Mares' and Reichert's conduct constituted deliberate indifference to Plaintiff's serious medical needs. Defendants both knew of Plaintiff's urgent medical condition, disregarded her repeated requests for assistance, relied on unverified and contradictory information from an adversarial party, and failed to take reasonable steps to obtain necessary medical care, directly creating a substantial risk of severe bodily harm or death.

199. Defendants Mares' and Reichert's conduct constituted deliberate indifference to Plaintiff's serious medical needs. Defendants both knew of Plaintiff's urgent medical condition, disregarded her repeated requests for assistance, relied on unverified and contradictory information from an adversarial party, and failed to take reasonable steps to obtain necessary medical care, directly creating a substantial risk of severe bodily harm or death.

200. As a direct and proximate result of Defendant Mares' and Defendant Reichert's deliberate indifference, Plaintiff suffered severe respiratory distress, acute physical pain, severe emotional trauma, an unconstitutional loss of liberty, and other general and special damages to be proven at trial.

WHEREFORE, Plaintiff seeks judgment against Defendants Mares and Defendant Reichert for compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT IX – *Monell* Liability: Failure to Train, Failure to Supervise, and Unconstitutional Customs and Practices**

*(42 U.S.C. § 1983 – Against Defendant City of Del City)*

201. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

202. Defendant City of Del City is liable under 42 U.S.C. § 1983 for constitutional violations caused by its official policies, widespread customs, systemic practices, and deliberate failures in training and supervision. A municipality is legally responsible when its official customs or widespread practices are the moving force behind a plaintiff's constitutional injuries.

203. The unconstitutional actions of Defendants Mares and Reichert on November 26, 2024, were not isolated, accidental, or aberrational events. Instead, their misconduct was a direct and predictable manifestation of the established customs, practices, and severe training deficiencies maintained by the Del City Police Department.

204. Defendant City of Del City's training and supervisory deficiencies include, but are not limited to: inadequate training regarding warrantless home entries; a severe failure to train officers on the proper utilization and cross-referencing of mandatory domestic violence verification databases (including OLETS, OSBI registries, and regional AIMS/COPLINK networks) to accurately identify protected parties and dominant aggressors as required by state law; failure to train on proper scene management; a failure to recognize and respond to medical distress; inadequate training on domestic-violence trauma responses; and a failure to safeguard detainees' private property and prescription medications.

205. Defendant City of Del City failed to train its law enforcement officers to recognize and appropriately respond to individuals experiencing acute respiratory distress, medication-dependent conditions, or other internal medical vulnerabilities. This specific training failure was a moving force behind, and directly resulted in, Plaintiff being forcefully transported to jail without her rescue inhaler, without an independent medical evaluation, and without access to her prescribed medications for three consecutive days.

206. The structural failure of Defendant City of Del City to intervene, train, or discipline its personnel regarding the generation of fraudulent administrative documentation and

unauthorized citizen data probes is explicitly driven by an established, widespread custom and practice of failing to log, process, or investigate formal internal affairs complaints regarding officer misconduct, effectively creating an unwritten system of administrative insulation.

207. As a direct manifestation of this custom and practice of deliberate indifference, Plaintiff filed a formal, comprehensive Internal Affairs complaint, regarding the multiple violations and constitutional threshold overreaches, directly with the listed command contact, Interim Police Chief Whitney Taylor, on February 10, 2026, and sent a subsequent follow-up inquiry on February 19, 2026, both of which went completely unacknowledged and uninvestigated by the police department.

208. This administrative failure is further exacerbated by the City's systemic negligence in maintaining its public-facing communications infrastructure. Defendant City of Del City completely failed to update its official municipal website to accurately display its active command hierarchy or verify when a new chief of police had been formally selected and installed.

209. Additionally, the City's operational utilization of a completely defunct, broken, or unmaintained public-facing email address ('chiefpd') to systematically reject and block incoming citizen internal affairs reports, combined with its complete operational failure to review or address the physical data-privacy forgeries processed within its station house, documents a widespread custom of administrative insulation. Under this custom, municipal executives consciously insulate officer misconduct from

professional and judicial scrutiny, actively expanding a chain of custody that exposes citizens to ongoing risks of severe personal data and identity exposure.

210. Plaintiff subsequently attempted to resolve this structural failure by transmitting an administrative escalation email with copies of the formal complaints directly to City Manager J.D. Hock on February 25, 2026, who possesses ultimate executive oversight and administrative control over the police department. City Manager J.D. Hock completely declined to reply to, acknowledge, or act upon Plaintiff's administrative communication, nor has the City ever logged or initiated an official review into the matter. This total executive inaction demonstrates a systemic custom of deliberate indifference and an institutional disregard for supervising, auditing, or addressing formal citizen reports of severe constitutional injuries, allowing city employees to operate with absolute impunity.

211. Defendant City of Del City failed to train its officers on proper investigative procedures, including verifying information provided by highly biased reporting parties, recognizing flatly contradictory statements, and avoiding blind reliance on conflicted individuals. As a direct result of this training deficit, Defendants unconstitutionally relied on the reporting party's false narrative of a video, false keypad codes, and authorized her unlawful entry into Plaintiff's locked bedroom.

212. Defendant City of Del City failed to train its officers on proper scene management and the mandatory constitutional obligation to safeguard private property during a seizure. Defendants authorized a hostile reporting party to enter Plaintiff's private residence and

locked bedroom completely unescorted, which directly resulted in the theft and disappearance of Plaintiff's prescribed Schedule II Vyvanse medication.

213. Defendant City of Del City systematically failed to supervise and discipline officers who engaged in improper investigative shortcuts, unauthorized home entries, and a blatant disregard for detainee medical needs. This persistent lack of supervision and absence of disciplinary accountability created an institutional environment where officers reasonably believed they could violate constitutional rights with complete impunity.

214. Defendant City of Del City maintained widespread, unconstitutional customs and practices of disregarding medical distress complaints by detainees, relying on jail medical staff to "handle it later," and transporting medically vulnerable individuals to jail facilities without proper on-scene medical clearance. These customs and training failures were the moving force behind Plaintiff's severe respiratory distress, prolonged denial of medication, and resulting physical harm.

215. Defendant City of Del City's systemic failures in training, supervision, and policy enforcement were driven by a deliberate indifference to the constitutional rights of the public, and were the direct and proximate cause of Plaintiff's constitutional injuries, including her unlawful seizure, warrantless home entry, deliberate indifference to her serious medical needs, and the unconstitutional deprivation of her private property.

216. As a direct and proximate result of Defendant City of Del City's unconstitutional policies, customs, and failures, Plaintiff suffered physical pain, severe respiratory distress, acute emotional trauma, the loss of her private property, legal expenses, an

unquantifiable and severe personal data and identity exposure risk, and other general and special damages to be proven at trial.

WHEREFORE, Plaintiff seeks judgment against Defendant City of Del City for compensatory damages, attorney's fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**COUNT X– State Law Tort: Negligence and Reckless Disregard**

(Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 et seq. – Against Defendant City of Del City)

217. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

218. Pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"), 51 O.S. § 151 et seq., Defendant City of Del City is liable for the tortious, negligent acts or omissions of its employees, including Defendants Mares and Reichert, committed while acting within the scope of their employment.

219. At all times relevant to this encounter, Defendants Mares and Reichert were acting within the scope of their employment as law enforcement officers for the City of Del City, triggering the City's respondeat superior liability under the OGTCA.

220. Defendants Mares and Reichert owed Plaintiff an independent, operational, and ministerial duty to exercise ordinary care in the execution of their physical custody of her and the management of her property. This operational duty included the non-discretionary obligations to ensure the basic physical safety and medical care of a restrained detainee in their custody, and to safeguard Plaintiff's private property from

known third-party criminal intervention once the officers exerted absolute control over the scene.

221. Defendants Mares and Reichert breached their operational duties of ordinary care by failing to obtain Plaintiff's rescue inhaler upon her explicit request, failing to summon on-scene emergency medical assistance, failing to transport Plaintiff to a hospital despite her open and known acute medical vulnerabilities, and failing to communicate Plaintiff's respiratory distress to jail intake personnel.

222. Defendants Mares and Reichert further breached their operational duties of care by negligently and improperly authorizing a hostile third-party reporting party to enter Plaintiff's private residence and locked bedroom completely unescorted and unsupervised while Plaintiff was seized and helpless.

223. The operational, negligent, and reckless actions of Defendants Mares and Reichert directly and proximately resulted in the total loss and theft of Plaintiff's prescribed Schedule II Vyvanse medication, which completely disappeared as a direct result of the reporting party being granted unsupervised access to Plaintiff's locked bedroom. Defendants Mares and Reichert failed to secure Plaintiff's property, failed to supervise the third party they introduced into the zone of danger, and failed to take basic operational steps to prevent foreseeable theft or tampering.

224. The conduct of Defendants Mares and Reichert demonstrated a reckless disregard for Plaintiff's physical safety and rights. Defendants Mares and Reichert possessed actual, subjective knowledge that Plaintiff was experiencing acute respiratory distress, had recently been treated at an urgent care facility, and completely relied on multiple

prescription medications and respiratory devices to survive. Despite this explicit knowledge, the officers carried out an operational transport of Plaintiff to jail without medical evaluation and denied her access to necessary medication.

225. The operational negligence and reckless disregard exhibited by Defendants Mares and Reichert were the direct and proximate cause of Plaintiff suffering severe physical pain, acute respiratory distress, severe emotional trauma, a total loss of her private prescription property, and other financial and general damages to be proven at trial.

226. Pursuant to the OGTCA, Defendant City of Del City is strictly liable for the resulting compensatory damages caused by the operational negligence and reckless disregard of Defendants Mares and Reichert.

WHEREFORE, Plaintiff seeks judgment against Defendant City of Del City for compensatory damages, costs, and all other relief the Court deems just and proper.

**COUNT XI – State Law Tort: False Arrest and False Imprisonment**

*(Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 et seq. – Against Defendant City of Del City)*

227. Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

228. Under Oklahoma law, false arrest and false imprisonment consist of an unlawful restraint of an individual's personal liberty without lawful justification or legal process.

229. Pursuant to the OGTCA, Defendant City of Del City is liable under the doctrine of respondeat superior for the actions of its officers, acting within the scope of their employment, who effectuate an arrest without a warrant and without probable cause.

230. On November 26, 2024, Defendants Mares and Reichert acted within the scope of their employment when they physically restrained, handcuffed, and removed Plaintiff from her home.

231. This restraint was entirely unlawful and lacked legal process because it was executed inside Plaintiff's home without a warrant, without consent, without exigent circumstances, and without probable cause to believe Plaintiff had committed a criminal offense.

232. The unlawful restraint was extended for four consecutive days due to the operational processing of a Probable Cause (CPC) affidavit that deliberately omitted the unconstitutional warrantless entry, withheld extensive exculpatory evidence, and was unconstitutionally notarized and processed by Defendant Ward.

233. At all times during her arrest and subsequent four-day detention in the county jail, Plaintiff was aware of her confinement, did not consent to the confinement, and *suffered severe physical and psychological distress as a direct result of the* confinement.

234. The actions of the City's employee officers constituted a complete deprivation of Plaintiff's liberty under Oklahoma law, directly and proximately causing her to suffer loss of liberty, emotional trauma, reputational harm, and legal expenses.

235. Pursuant to the OGTCA, Defendant City of Del City is strictly liable to Plaintiff for compensatory damages resulting from this false arrest and false imprisonment.

236. WHEREFORE, Plaintiff seeks judgment against Defendant City of Del City for compensatory damages, costs, and all other relief the Court deems just and proper.

## INJURIES AND DAMAGES

237. As a direct, proximate, and foreseeable result of Defendants' unconstitutional, unlawful, and operationally negligent conduct, Plaintiff suffered severe physical, emotional, reputational, and financial injuries and damages in an amount to be determined at trial.

238. Physical Injuries and Medical Complications: As a direct and proximate result of Defendants Officers Aron Mares and Blake Reichert forcefully breaching the residential threshold and crushing Plaintiff between the heavy entrance door and the rigid interior wall, Plaintiff sustained acute physical trauma, including soft-tissue bruising, joint strain, and severe physical pain. Furthermore, the intense physical exertion and subsequent emotional shock immediately induced severe respiratory distress. Defendants' Mares and Reichert's deliberate indifference to her medical needs during transport and booking prolonged and exacerbated this respiratory crisis, causing extensive physical suffering, leaving her untreated during her arrest and confinement, and requiring subsequent external medical evaluation and treatment.

239. Severe Emotional Distress and Mental Trauma: The unconstitutional warrantless invasion of Plaintiff's home, her sacred place of sanctuary, combined with the threat of having her door broken down and the execution of a pretextual arrest, caused Plaintiff to suffer immediate, severe, extreme fear, humiliation, panic, and ongoing psychological trauma. Plaintiff has experienced profound anxiety, sleep disturbances, a persistent fear for her personal safety inside her own home, and severe emotional trauma resulting from the violation of her private residence, the public nature of the

arrest, and her subsequent jail confinement. This distress directly forced Plaintiff to incur financial expenses to install a residential security camera system to mitigate her ongoing fear of unlawful police intrusion.

240. Loss of Liberty and Freedom: Plaintiff was subjected to a severe, unconstitutional deprivation of freedom and an unlawful loss of her personal liberty. This directly resulted in an unjust, non-consensual confinement inside a patrol transport vehicle and her subsequent detention within the Oklahoma County Jail.

241. Consequential Legal, Reputational, and Administrative Hardships: The administrative publication of these unverified, deceptive, and synthetically elevated domestic-violence entries on the public electronic indexing database (OSCN.net) inflicted immediate, severe, and lasting reputational stigma upon Plaintiff. The automated public docket erroneously labeled the charge as a violation of 21 O.S. § 644.1 (Domestic Abuse with a Prior Pattern of Physical Abuse—a high-severity felony classification), *instead of a standard misdemeanor classification, generating acute and systemic* record distortion.

242. Despite the general disclaimer hosted on the public database, multiple criminal defense practitioners explicitly declined to provide legal representation because Plaintiff maintained her absolute innocence and stated upfront her refusal to accept a compromise or plea agreement. Due to the severe and explicit nature of the erroneous felony classification listed on the online docket, approximately 95% of contacted legal practitioners declined to return communications or evaluate the merits of the case.

243. Furthermore, despite a dismissal with prejudice, the persistent public stigma attached to a fabricated domestic-abuse record effectively insulated Plaintiff from local civil rights representation, as private civil counsel uniformly declined to engage with the toxic reputational stigma of representing an alleged domestic abuser in a civil forum. Consequently, the operational negligence and constitutional violations executed by the Defendants directly, predictably, and financially forced Plaintiff to pursue legal redress pro se, significantly amplifying her operational damages, economic stress, litigation expenses, and administrative hardships, for which she seeks full compensation.

244. Property Loss and Special Economic Damages: As a direct consequence of the unlawful seizure and the subsequent malicious prosecution initiated via a flawed CPC affidavit, Plaintiff suffered significant financial harm, including bond fees, property damage to her exterior residence, and the total loss of her secure environment.

245. Furthermore, as a direct consequence of Defendants' operational negligence in actively facilitating a known unauthorized individual's unsupervised access to the residence over Plaintiff's explicit objections, the reporting party executed a felony theft resulting in the total loss of Plaintiff's legally prescribed Schedule II controlled medication (Vyvanse). Because Defendants abandoned all standard protocols for scene security and permitted this access, Plaintiff was forced to personally absorb substantial out-of-pocket expenses to treat the resulting medical crisis. These special economic damages include, but are not limited to: rehabilitation facility fees, medical deductibles, clinical copays, prescription medication costs, and associated transportation and medical treatment costs for the reporting party.

246. Reservation of Rights for Ongoing Damages: Plaintiff's injuries, emotional distress, and financial losses are ongoing in nature. Plaintiff explicitly reserves the right to amend or supplement this section to include additional medical expenses, special economic damages, or specific out-of-pocket costs as they continue to accrue throughout the *duration of this litigation.*

## PRAYER FOR RELIEF

247. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

248. Compensatory Damages under 42 U.S.C. § 1983: Against Defendants Aron Mares, Blake Reichert, Christopher Griggs, and Chauncey Ward, in their individual capacities, jointly and severally, for all physical injuries, severe emotional distress, loss of liberty, reputational harm, and special economic damages detailed in the injuries and damages section, in an amount to be determined at trial;

249. Compensatory Damages under the Oklahoma Governmental Tort Claims Act (GTCA): Against Defendant City of Del City solely, for the operational negligence, negligence per se, false arrest, and false imprisonment committed by its employees acting within the scope of employment, for all categories of damages detailed in the Injuries and damages section, in an amount to be determined at trial and subject to the statutory limits of the GTCA;

250. Punitive Damages: Against individual Defendants Aron Mares, Blake Reichert, Christopher Griggs, and Chauncey Ward, in their individual capacities, for their

reckless, willful, and malicious disregard of Plaintiff's constitutional rights, in an amount to be determined at trial;

251. Municipal Liability Damages: Against the City of Del City under Monell for the unconstitutional policies, customs, and practices that proximately caused Plaintiff's federal constitutional injuries;

252. Declaratory Relief: A declaration by the Court that Defendants' warrantless entry, unlawful arrest, excessive force, judicial deception, and operational negligence violated Plaintiff's rights under the Fourth Amendment, the Fourteenth Amendment, and Oklahoma law;

253. Equitable Injunctive Relief: Ordered by the Court as deemed appropriate, including but not limited to: requiring the City of Del City to implement mandatory training, supervision, and officer accountability measures regarding Payton home-entry restrictions and Oklahoma domestic violence statutes; requiring the City to adopt strict policies ensuring compliance with statutory domestic violence procedures and dominant-aggressor analysis; and requiring the City to establish a functional, transparent Internal Affairs complaint process;

254. Attorney's Fees and Costs: An award of reasonable attorney's fees, litigation expenses, and court costs pursuant to 42 U.S.C. § 1988 and other applicable law;

255. Interest: Pre-judgment and post-judgment interest as allowed by law; and

256. Further Relief: Any additional relief the Court deems just, proper, and equitable.

## JURY DEMAND

257. Plaintiff Georgia C Bear hereby demands a trial by jury on all issues so triable under the United States Constitution, federal law, and Oklahoma law.

Dated: August 21, 2026.

Respectfully submitted,

Georgia C Bear, Plaintiff Pro Se
Mailing Address:
PO Box 45760
Tinker Afb, OK 73145
Telephone: (405)212-8709
Email: thefourbears@gmail.com